Merrimack
No. 6870

MICHAEL N. PERREAULT v. PENNY M. (PERREAULT) COOK

June 28, 1974

*Peter V. Millham,* by brief and orally, for the plaintiff.

*Upton, Sanders & Smith* and *Gary B. Richardson (Mr. Richardson* orally) for the defendant.

KENISON, C.J. This case raises the important question of what standards should be applied to determine whether a sufficient change in circumstances has occurred so as to warrant a modification of a child custody award. The defendant filed a petition to bring forward and modify a prior decree which awarded custody of the children of the parties to the plaintiff. A hearing before Master *Leonard C. Hardwick,* Esquire, resulted in a report recommending a change in the custody of the children from the plaintiff to the defendant. *Bois,* J., accepted the report and reserved and transferred the plaintiff's exception thereto.

Michael and Penny Perreault were married on December 9, 1961, in New Hampshire and had three children as a result of this union. Their relationship deteriorated over the years, and in 1967 Michael filed a libel for divorce on the grounds that Penny's conduct had seriously injured his health and endangered his reason. A decree of divorce, incorporating a stipulation which committed the custody of the children to Michael with liberal visitation rights to Penny, was granted on January 15, 1968. Shortly thereafter, Penny moved to Vermont and married Ralph Cook, and Michael married Pauline, remaining in New Hampshire. In July 1968, Penny took the children to Vermont without notifying Michael and refused to return them in violation of the decree. Michael brought a habeas corpus action against Penny in Vermont, and a stipulation was agreed upon in settlement of the proceeding which limited her visitation rights to specific times and days.

In February 1972, Michael informed Pauline that he no longer loved her. They separated when it became obvious there was no possibility of reconciliation, and Michael filed for a divorce in March 1972. In May 1972, his former

wife Penny filed a petition to bring forward, requesting custody of the children due to changed circumstances. A hearing on temporary orders before Master *Henry P. Callahan,* Esquire, resulted in a recommendation, approved by *Flynn,* J., on June 2, 1972, that the custody arrangement remain undisturbed. Penny then filed a motion requesting that the question of custody be referred to the Merrimack County Department of Probation for an investigation. On February 23, 1973, the matter was so referred, and on June 1, 1973, the department recommended that custody be given to Penny with liberal visitation rights to Michael. The court assigned the case to Master *Leonard C. Hardwick,* Esquire, who after a hearing filed his report which was approved by *Bois,* J., on September 18, 1973, recommending a change in the custody of the children to Penny and setting forth the visitation rights of Michael.

The plaintiff has requested this court to require the party seeking to modify a child custody award to prove that a substantial and material change of circumstances has occurred before the existing custody arrangement will be altered. The "substantial and material" test has been applied to petitions for modification of a support order, but it should be stressed that we have accorded wide discretion to the trial court in making this determination. *Labrie v. Labrie,* 113 N.H. 255, 305 A.2d 687 (1973); *Peterson v. Buxton,* 108 N.H. 77, 78-79, 227 A.2d 779, 780-81 (1967); *Fortuna v. Fortuna,* 103 N.H. 547, 549-50, 176 A.2d 708, 710-11 (1961). However, we have never addressed in detail the standard applicable to petitions for a modification of a *custody* award. *See Potter v. Rosas,* 111 N.H. 169, 172, 276 A.2d 922, 924 (1971); *Veilleux v. Hastings,* 109 N.H. 568, 569, 258 A.2d 359, 360 (1969).

The considerations requiring a modification of a child custody award are of a different character from those relating to a support order. In a support proceeding, the primary emphasis is on the financial condition of the parties. Since the financial status of individuals is always fluctuating, a husband and wife, when divorced, should have no fixed expectation of maintaining a support order at a particular level. Note, *Economics of Divorce: Alimony*

*and Property Awards,* 43 U. Cinn. L. Rev. 113, 163 (1974). The person required to pay support has a continuing duty to provide for the needs of his former family. H. Clark, Jr., Law of Domestic Relations 488-98 (1968). This obligation is tied in part to the vicissitudes of his finances, and thus, it is proper for a trial court to have wide discretion in determining whether conditions have so changed that a particular support order is unfair. The standard of "substantial and material" is extremely flexible in this context, and a trial court will not be overturned if there is evidence to support its findings. *Fortune v. Fortune,* 113 N.H. 708, 313 A.2d 737 (1973); *Ballou v. Ballou,* 95 N.H. 105, 58 A.2d 311 (1948).

In a custody proceeding, on the other hand, the focus is on the welfare of the child. The stability of family relationships is recognized as an essential ingredient in nurturing the healthy psychological development of a child. Note, *Modification of Child Custody Awards in Indiana: The Need for Statutory Guidelines,* 47 Ind. L.J. 129, 134-36 (1971). The shuffling of a child back and forth between a father and mother can destroy his sense of security, confuse his emotions, and greatly disrupt his growth as an individual. Freed & Foster, *The Shuffled Child and Divorce Court,* 10 Trial 26 (1974); Note, *The Dangers of Change in Parentage in Custody and Adoption Cases,* 83 L.Q. Rev. 547, 549 (1967); Note, *Alternatives to "Parental Right" in Child Custody Disputes Involving Third Parties,* 73 Yale L.J. 151, 161 (1963). Accordingly, the party to whom custody of a child has been given pursuant to a divorce decree has a much higher interest in maintaining the status quo for the purpose of protecting the child from psychological injury. The relationship established by the custody award should not be disturbed unless the moving party demonstrates that the circumstances affecting the welfare of the child have been so greatly altered that there is a strong possibility the child will be harmed if he continues to live under the present arrangement. *See Uniform Marriage and Divorce Act* § 409, 5 Family L.Q. 205, 247-48 (1971); R. Levy, Uniform Marriage and Divorce Legislation: A Preliminary Analysis 234-37 (1969). The inquiry must necessarily con-

centrate on the circumstances of the family in which the child has been placed, and the discretion of the court is more limited than in a support case. *See generally* H. Clark, Jr., Law of Domestic Relations § 17.7 (1968); 2 W. Nelson, Divorce and Annulment § 15.39 (2d ed. 1961, Supp. 1968); Watson, *The Children of Armageddon: Problems of Custody Following Divorce,* 21 Syracuse L. Rev. 55 (1970).

Applying this standard to the present case, we believe that although it is a close question, the defendant has met her burden of proof. The master emphasized that there was no evidence that the plaintiff was an unfit father, but he believed that the long-range interests of the children would be best served by placing them with the defendant. It is apparent that the stability of the plaintiff's family was shaken by the failure of his marriage to Pauline and their subsequent separation. The plaintiff found it necessary to readjust his work schedule so that he could be at home with the children and meet the domestic requirements of the household. However, at times his work delayed him, and he was forced to rely on his parents, who live in a neighboring town, to fill in when he was not available. The master was obviously concerned that a strong likelihood of psychological and emotional harm to the children existed from the absence of a mother and the disruption of their family life, especially in view of the former divorce. There was evidence that the defendant and her husband, who now have two children of their own, have established a stable household and are capable of raising the children in a healthy and proper environment. After hearing the evidence and privately interviewing the children (aged respectively 11, 10 and 8 in 1973), the master concluded that the critical need was a stable family relationship and thus transferred them to the custody of the defendant. We are satisfied that the master gave careful consideration to the difficult questions raised by this petition.

*Plaintiff's exception overruled.*

All concurred.