Hillsborough
No. 7246

PETER B. ROUSSEAU

v.

PAMELA L. ROUSSEAU

February 27, 1976

*Hanrahan & Flynn (Mr. John W. Hanrahan* orally) for the plaintiff.

*Victor W. Dahar,* by brief and orally, for the defendant.

GRIFFITH, J. Plaintiff petitioned the court to obtain custody of the two minor children of the parties which, in the stipulation entered into in the divorce between the parties, had been awarded to the defendant. Hearing was held before the Trial Court (*Douglas,* J.) who granted the petition of the plaintiff and ordered transfer of the custody of the children to the plaintiff. Defendant's exceptions, including her exception to the denial of a motion to set aside the court's order, were reserved and transferred by the trial court.

Plaintiff was divorced from the defendant on August 7, 1973, on the grounds of irreconcilable differences. Defendant, who was not represented by counsel at that time, entered into a stipulation awarding plaintiff $150,000 in stocks and bonds, two of the three automobiles owned by the parties and all their real estate, consist-

ing of land in Weare and the residence of the parties located in Goffstown. Custody of the two sons of the parties, aged 5 and 2, was awarded to the defendant. The plaintiff agreed to pay $35 per week support and to permit defendant to live in the Goffstown home with the minor children so long as she remained unmarried. The plaintiff further agreed to pay all expenses of maintenance, mortgage payments and taxes on the home. On August 6, 1974, defendant, now represented by counsel, entered into a stipulation modifying the prior stipulation of August 7, 1973, with a provision that within two years, or earlier at the option of the defendant, plaintiff would convey the Goffstown home to defendant subject to the mortgage and would continue to pay the mortgage and taxes until the transfer. Plaintiff further agreed to maintain a charge account at Grant's for defendant's purchase of clothing for the two minor children.

On September 26, 1974, plaintiff petitioned the court for a change in custody alleging that he was ready and able to assume custody and that defendant was unfit to be entrusted with the children's care. Defendant filed a counter petition asking for an increase in the support order. The custody petition was first referred to the probation department and their report, filed December 5, 1974, recommended that custody of the minor children be awarded to the plaintiff.

The plaintiff married Cheryl Tancrel in October of 1974, and they now live in a house in Sanborn, New Hampshire, which the plaintiff purchased before their marriage. Cheryl Tancrel before the marriage was a widow with a two-year-old daughter. Cheryl testified that she was not employed outside of the household and was prepared to assume the care of the children James and Peter. The house in Sanborn was determined to be adequate for the family with the addition of the two minor children, and there was testimony that the plaintiff and his present wife would have no more children.

In *Perreault v. Cook*, 114 N.H. 440, 322 A.2d 610 (1974), we noted that in child custody proceedings the focus was on the welfare of the child. We noted the evils of shuffling a child back and forth, and stated that a custody award "should not be disturbed unless the moving party demonstrates that the circumstances affecting the welfare of the child have been so greatly altered that there is a strong possibility the child will be harmed if he continues to live under the present arrangement." *Id.* at 443, 322 A.2d at 612. We further noted that "[t]he inquiry must necessarily concentrate

on the circumstances of the family in which the child has been placed, and the discretion of the court is more limited than in a support case." *Id.* at 443-44, 322 A.2d at 612-13.

The trial court in this case made no specific findings and none were requested. The court indicated that the determination that the best interests of the children would be served by granting custody to the plaintiff was made on the facts after "due consideration to Perreault." It thus appears that the change in custody order was made on the basis of the *Perreault* rule. In addition to the evidence given at the hearing, the trial court noted that it took into account the probation department report.

While *Del Pozzo v. Del Pozzo,* 113 N.H. 436, 309 A.2d 151 (1973), laid down guidelines for the trial court in initial custody orders, *Perreault v. Cook supra* established limitations on the exercise of discretion where a change of custody is sought. Viewing the evidence most favorably to the plaintiff and bearing in mind that the belief or disbelief of parties and witnesses is solely the prerogative of the trial court, we hold that the order changing custody was warranted. *Lester v. Lester,* 109 N.H. 359, 361, 252 A.2d 429, 431 (1969); *Callaghan v. Callaghan,* 108 N.H. 264, 233 A.2d 825 (1967).

There was evidence from which the trial court could find the children while in the custody of the defendant were dirty, unkempt and insecure. Bearing on the defendant's life style was her trip to Louisiana during the oldest boy's first week in school. While this trip was professedly made to look for work, no application for a job was made there and the probation officer could find no motive beyond the defendant's personal pleasure. In addition, there was the inordinate amount of indiscriminate traffic through the house, consisting of persons visiting and sleeping in. Finally, there was the defendant's association with an unmarried couple who lived together for eight years producing three children. It appeared that at the time of the hearing, the woman and the three children were on public welfare. The woman and her three children lived in the house as baby-sitters during the Louisiana trip. The man, who apparently has been separated from the woman for some time, has been a regular visitor, without the woman, at the defendant's home to the extent that he has adopted a role in loco parentis to the children. Even assuming, as alleged by the defendant, that the number of persons in the house were there for Bible study, the evidence supports the implied finding of the trial court that defendant was not providing the children with a stable home life. On this basis, the court could properly find there was a "strong

possibility the child[ren] [would] be harmed if [they] continue to live under the present arrangement." *Perreault v. Cook,* 114 N.H. 440, 443, 322 A.2d 610, 612 (1974).

*Defendant's exceptions overruled.*

All concurred.